UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE ANN LEVEQUE,

                    Plaintiff,          Civil Action No.: 14-12096
                                      Honorable Marianne O. Battani
                    v.                Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 16, 19]

      Plaintiff Michelle Leveque, proceeding *pro se*, appeals a final decision

of Defendant Commissioner of Social Security ("Commissioner") denying

her application for Disability Insurance Benefits ("DIB") under the Social

Security Act (the "Act").  Both parties have filed summary judgment

motions, which were referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  After a review of

the evidence, the Court concludes that the Administrative Law Judge

("ALJ") committed no more than harmless error in finding Leveque not

disabled for the limited period between her alleged onset date and her date

last insured, and that his decision is nevertheless supported by substantial

evidence of record.  For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 19]** be **GRANTED**;

- Leveque's motion **[R. 16]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

At the time of application, Leveque was a 38-year-old high school graduate who had three years of college education.  [R. 13-2, Tr. 39; R. 13-5, Tr. 149].  She had previously worked in management at a retail store, and later as an independent contractor performing various retail support functions.  [R. 13-2, Tr. 40-45].  She stopped working in 2008 after suffering an abscess on the trunk of her body, which she testified was diagnosed as methicillin-resistant staphylococcus aureus, or "MRSA," a contagious and multi-drug resistant staph infection.  [*Id.*, Tr. 45, 47].[1]  She claimed disability as a result of repeated MRSA outbreaks, as well as other conditions, including diabetes, asthma, hypertension, anxiety, depression, irritable bowel syndrome, acid reflux, full-mouth teeth extraction, insomnia, and acne.  [R. 13-6, Tr. 194].

---

[1] *See also* Mayo Clinic, MRSA Infection, http://www.mayoclinic.org/diseases-conditions/mrsa/basics/definition/con-20024479 (last accessed June 10, 2015).

## A.    Procedural History

Leveque filed an application for DIB in April 2010, alleging disability as of May 7, 2008, with a date-last-insured ("DLI") of December 31, 2009. [R. 13-5, Tr. 149-55; R. 13-2, Tr. 16].  The claim was denied initially, although a concurrently filed supplemental security income ("SSI") application was approved at this level for a period beginning October 2010. [R. 13-4, Tr. 82-90].  Leveque filed a timely request for an administrative hearing on her DIB claim, which was held on January 6, 2012.  [R. 13-2, Tr. 36-79; R. 13-4, Tr. 95-96].  Leveque, who was at the time represented by counsel, testified at the hearing, as did a vocational expert ("VE").  [R. 13-2, Tr. 36-79].  In a February 23, 2012 written decision, the ALJ found Leveque not disabled prior to her DLI.  [*Id.*, Tr. 13-27].  On June 28, 2013, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [*Id.*, Tr. 5-11].  Leveque timely filed for judicial review.  [R. 1; R. 13-2, Tr. 1-2].

## B.    The ALJ's Application of the Disability Framework

DIB is available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

3

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[2]  Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found.  *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Here, the ALJ applied the five-step sequential analysis and concluded that Leveque was not disabled for the 18-month period between May 7, 2008 and December 31, 2009.  At step one, he found that she had not engaged in substantial gainful activity since her alleged onset date.  [R. 13-2, Tr. 18].  At step two he identified severe impairments of hypertension, asthma, diabetes mellitus and anemia.  [*Id.*].  At step three he determined that none of Leveque's severe impairments, either alone or in combination, met or medically equaled a listed impairment.  [*Id.*, Tr. 19].

Next, the ALJ assessed Leveque's residual functional capacity, finding her capable of a limited range of light work that included a sit and stand option, only occasional climbing of stairs and ramps, and occasional stooping, crouching, and crawling.  [*Id.*].  The work must not involve repetitive reaching or handling, or concentrated exposure to unprotected heights, moving machinery, extreme heat, cold, humidity, dusts, fumes, or gasses.  [*Id.*].  At step four the ALJ determined that this RFC prevented Leveque from returning to her past relevant work.  [*Id.*, Tr. 21].  However, at step five, with the assistance of VE testimony, the ALJ concluded that a hypothetical claimant matching Leveque's profile could engage in a

5

substantial number of other occupations, such that she was not disabled. [*Id.*, Tr. 21-22].

## II.    STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is

conditioned on the ALJ's adherence to governing standards.  "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings."  *Gentry*, 741 F.3d at 723.  *See also Rogers*, 486 F.3d at 249.  In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.  *Id.* at 655-56.

With these standards in mind, this Court finds that the ALJ's determination that Leveque is not disabled is supported by substantial evidence.

## III.   ANALYSIS

Leveque makes a number of arguments, many of which understandably conflate the issues of her disability status before and after

7

her date last insured.  Because Leveque is proceeding *pro se*, the Court has taken extra care to review the record for error and supportability.  The Court finds no merit in Leveque's arguments, and no more than harmless error in the ALJ's decision as a whole.

### A.    Adequacy of Medical Record and Sentence Six Remand

Leveque argues that the Commissioner's initial denial of her claim was based on an incomplete medical record, although she concedes that this same record was sufficient to entitle her to SSI benefits as of October 2010.  [R. 16, PgID 687-88].  She does not identify what records were missing at this level.  Nevertheless, the Court finds that the lack of a complete record at the initial level is irrelevant because Leveque appealed her initial denial of DIB benefits to an ALJ, who was not bound by the initial denial decision, and instead conducted an independent review of the evidence and considered the record as a whole.  *Hambrick v. Astrue*, No. 10-cv-54, 2012 U.S. Dist. LEXIS 116900, *28; 2012 WL 3597500, * 9 (E.D. Tenn. May 21, 2012) *adopted by* 2012 U.S. Dist. LEXIS 116846; 2012 WL 3598255  (E.D. Tenn. Aug. 20, 2012) (well established that ALJ is not bound by initial determination).

Leveque additionally argues that the ALJ failed to consider all of the relevant medical evidence.  To the extent Leveque's critique relates to the

medical evidence contained in Exhibits 1F through 21F, the Court notes that ALJs are not "required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.,* 397 F. App'x 195, 199 (6th Cir. 2010). Moreover, the ALJ was not required to consider evidence relating to the time period after Leveque's date last insured where it did not "confirm a finding of disability during the relevant time period." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The Commissioner found Leveque's records only to support disability as of October 2010, despite the fact that Leveque applied for SSI benefits in April 2010, and she had not articulated a basis for the Court to question that determination. [R. 13-5, Tr. 88-89].

The records in Exhibits 22F and 23F were not before the ALJ, as the hearing transcript clearly notes that the last record submitted to the ALJ at the hearing were lab results relevant to Leveque's alleged MRSA, which is Exhibit 21F. [R. 13-2, Tr. 27, 39]. Therefore, they cannot properly be considered on this appeal. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

To the extent Leveque argues for remand to consider these additional records, she has not sustained her burden of showing good cause and

9

materiality, as required by sentence six of the Act. *Id.*; 42 U.S.C. § 405(g). Materiality requires a showing of "a reasonable probability that the [Commissioner] would have reached a different disposition . . . if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Leaving aside whether Leveque had good cause for not presenting Exhibits 22F and 23F to the ALJ, they do not meet the materiality standard, so remand is not warranted.

The records contained in Exhibit 22F are immaterial; they are a collection of treatment notes already located in other portions of the record before the ALJ. [R. 13-7, Tr. 276-82, 296-99, 308-12, 317-19, 327-32; R. 13-8, Tr. 589-609]. The dental records from 2005 to 2010 shown in Exhibit 23F reveal that a dentist recommended dental restoration as a result of tooth decay from smoking, poor dental hygiene and an unspecified infection, but that Leveque chose extraction instead due to affordability. 13-8, Tr. 611-13]. Other records show that the extractions had good results. [R. 13-7, Tr. 306-307]. Thus, consideration of Exhibit 23F records would not lead the ALJ to reach a different decision, and remand to consider them is unwarranted.

The Court finds no error in the ALJ's evaluation of the record evidence and no reason to require remand under Sentence Six.

10

**B.    Treating Physician Records**

Leveque argues that the ALJ erred in misconstruing treating physician records.  She does not argue that the ALJ failed to give sufficient weight to a treating physician's opinion regarding the severity of or limitations caused by her impairments, and the record does not show that a treating physician offered such an opinion, so the treating physician rule is not implicated here.  *Rogers,* 486 F.3d at 242 (treating physician's opinion regarding nature and severity of claimant's impairment ordinarily given controlling weight).  Instead, Leveque's argument relies on the ALJ's evaluation of the treatment records.  The Court finds no error.

She first argues that the ALJ erred in characterizing her asthma as under good control when she had fourteen respiratory infections during the insured period.  [R. 16, PgID 709].  However, the majority of infections included in that number were sustained after the relevant time period.  [*Id.*, PgID 697-705].  During the relevant period, Leveque sustained only three asthmatic exacerbations requiring treatment, in the emergency room in May and September 2008, and with her primary care physician in March 2009.  [R. 13-7, Tr. 276-82, 287-88, 319].  Each time she was diagnosed with either bronchitis or asthmatic bronchitis, treated and released the same day.  [*Id.*].  While a May 2008 chest x-ray showed "[m]ild

11

peribronchial thickening compatible with small airway disease" with "[n]o

acute process," a September 2008 chest x-ray was clear.  [*Id.*, Tr. 341,

347].

Leveque further argues the ALJ erred in mischaracterizing her skin

infections as mere cellulitis rather than MRSA, and in downplaying their

frequency.  [R. 13-2, Tr. 18, 20].  She asserts that she suffered ten

"documented" MRSA skin infections during the relevant period [R. 16, PgID

709], but the medical evidence shows only five (in May and October 2008,

and June, September and November 2009).  [R. 13-7, Tr. 264-75, 283-90,

298-99, 313-14].  In each case, she was prescribed medication and

discharged without evidence of further complications.  [*Id.*].  Although

Leveque was first prescribed an oral acne medicine in June 2008, she

admitted in June and September 2009 that she was not using it regularly

and had only been taking it with outbreaks.  [*Id.*, Tr. 298, 301, 318].  She

began taking it daily beginning in September 2009.  [*Id.*, Tr. 299].  Further,

although the ALJ was not required to consider later treatment records,

there is no evidence of additional skin lesions after November 2009, and

only one documented occurrence of infected tissue at all (a breast duct) in

2010 and 2011.  [R. 13-8, Tr. 539].

Finally, while the ALJ may have misinterpreted Leveque's lab results

12

as not indicative of MRSA, [R. 13-2, Tr. 20], Leveque offers no evidence

that that diagnosis meant that she required work-related restrictions not

already contemplated by the ALJ's RFC, and none appear obvious to this

Court. *Higgs v.* Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere

diagnosis of arthritis, of course, says nothing about the severity of the

condition.").  Therefore, any such error is harmless.

### C.   Equivalency and Reliance on Consulting Physician

Leveque argues that the ALJ erred in relying on the physical RFC

generated by reviewing consultant Dr. Bernard Stevens [R. 13-7, Tr. 357-

63], and in failing to obtain a medical opinion as to whether she met or

medically equaled a listing.  In the absence of other opinion evidence to the

contrary, an ALJ is entitled to rely on the opinion of a state agency

consulting physician where it is consistent with the record as a whole.

*Dunmore v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 677, 687 (N.D. Ohio

2013).

Here, Leveque's argument that the ALJ failed to obtain a medical

opinion on equivalency is well-taken, but only to a point.  The ALJ stated

that his step three finding was premised, in part, on the opinions of state

agency medical consultants who concluded Leveque did not meet or

medically equal a listing.  [R. 13-2, Tr. 19].  However, there is no such

13

opinion in the record as to her physical impairments, only her mental ones. [R. 13-7, Tr. 357-63, 391-422]. Although the ALJ erred in failing to obtain an opinion on medical equivalency as to Leveque's physical impairments, the error is harmless because the evidence does not demonstrate the possibility that she could meet the criteria of a listed impairment. *Cf. Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 415 (6th Cir. 2011) (error not harmless where it was possible that evidence put forth could meet a listing).

Leveque points to Listing 3.03 (Asthma), but there is no evidence that she had at least six attacks in the span of a year during the relevant period. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.03. She points to Listing 8.04 (Chronic infections of the skin or mucous membranes), but does not offer evidence that she suffered from "extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment." *Id.*, § 8.04. As noted above, she had five lesions during the relevant period, each of which she concedes healed with treatment within two to three weeks. Finally, Leveque references Listing 9.00 (Endocrine Disorders), but that is not an independent listing. "We evaluate impairments that result from endocrine disorders under the listings for other body systems." *Id.*, § 9.00. The Court finds that the ALJ's failure to obtain an opinion on medical equivalency is

14

therefore harmless error.

**D.    Due Process**

Leveque argues that her due process rights were violated by the omission from the record of consultative examiner psychiatrist Dr. Michael Matouk's April 2011 report.  [R. 13-7, Tr. 412].  However, the hearing transcript shows that the ALJ asked counsel if she had any objection to the admission of the exhibits of record, and no objection was lodged or omission identified.  [R. 13-2, Tr. 38-39].  Furthermore, reviewing psychologist Dr. David Biscardi summarized the contents of Dr. Matouk's report and relied on it to determine that Leveque had marked limitations in concentration, persistence and pace as of October 2010, but no evidence of a mental impairment prior to that date, a finding affirmed by reviewing medical consultant J. V. Rizzo.  [R. 13-7, Tr. 391-416, 419-22].  Therefore, the omission of Dr. Matouk's report from the record is at most harmless error.

Leveque further argues that she was denied due process because she was not permitted to fully explain her symptoms during the hearing, and because her counsel was not permitted to question the VE.  However, the transcript reveals that Leveque gave long narratives about her conditions on many occasions, and she was questioned by both the ALJ

15

and her own counsel, with full ALJ acquiescence.  [See, e.g., R. 13-2, Tr. 47-51, 53-54, 59-62, 67-72].  Second, although the ALJ should have but did not invite Leveque's counsel to question the VE, her counsel did not request to question the VE, and Leveque fails to specify what additional questions could have been asked that would have impacted the ALJ's opinion.  [*Id.*, R. 78].  The Court finds no due process violation here.

### E.   Credibility

Leveque argues that the ALJ erred in assessing her credibility as it relates to her allegations regarding her irritable bowel syndrome, pain, and panic attacks.  Although credibility determinations of witnesses are within the province of the ALJ, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Here, the ALJ's credibility determination is well-supported.  He found that Leveque's allegations of monthly MRSA infections, pain, daily anxiety attacks and irritable bowel syndrome were unsubstantiated by the record evidence and inconsistent with her activities of daily living, which included caring for two children, doing household chores, driving and shopping.  [R. 13-2, Tr. 20-21].

Indeed, as noted above, there is no evidence that Leveque suffered monthly MRSA infections.  Further, her claims of daily panic attacks finds

no support in the record; she complained only once during the relevant period of depression and anxiety, and only wanted herbal remedies rather than medicine or therapy.  [*Id.*; R. 13-7, Tr. 298-99]  Additionally, the ALJ properly cited to and relied on the reviewing consultant's opinion that there was inadequate evidence to support a mental impairment during the relevant period.  [R. 13-2, Tr. 21; R. 13-7, Tr. 419-22].

The ALJ had good reason to find that the severity of the pain Leveque reported as a consequence of her MRSA infections was not supported by the record.  [R. 13-2, Tr. 20].  Only one of Leveque's five documented MRSA infections required administration of a narcotic pain medication.  [R. 13-7, Tr. 266, 273, 284, 288, 314, 318].  Further, the record before the ALJ was devoid of evidence related to Leveque's dental pain, except one treatment note in November 2009 documenting severe dental pain and an inability to eat.  [*Id.*, Tr. 314].   In March 2010, one week post-extraction, Leveque was noted as "feeling very good about herself and her health at this time."  [*Id.*, Tr. 307].

Finally, the ALJ concluded that Leveque's allegation of needing to use the restroom 6-10 times a day was inconsistent with her activities of daily living and the medical evidence, which made no mention of a diagnosis of or treatment for irritable bowel syndrome, and no abnormal

17

abdominal exams.  [R. 13-2, Tr. 21; R. 13-7, Tr. 276, 283, 287, 298-301,

319].  The medical record mentions diarrhea once, after Leveque's date

last insured, when she reported diarrhea as a side effect of her diabetes

medication, which was then discontinued.  [R. 13-7, Tr. 310-12].  Other

records before and after this date generally reflect no diarrhea,

constipation, unusual stools or other bowel issues.  Some records from late

2011 mention a history of irritable bowel syndrome, but with no examination

or treatment for that condition.   [R. 13-7, Tr. 271, 276, 283, 287, 296, 298,

301, 425, 428, 511, 515, 531, 541]. The ALJ did not err in finding Leveque

less than fully credible.

### F.    Application of the Medical-Vocational Guidelines

Finally, Leveque argues that the ALJ erred in applying the medical-

vocational guidelines to her claim.  However, the ALJ did not rely on the

guidelines to adjudicate her claim, but instead elicited and relied upon VE

testimony to render his step five conclusion that she could perform other

work in the national economy, specifically the occupation of inspector, with

1,500 jobs in the region and 3,000 in the state.  [R. 13-2, Tr. 21-22].  The

ALJ had the discretion to rely on the VE testimony rather than the "grid" to

make his decision. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).

The remainder of Leveque's argument pertaining to the ALJ's finding

that her RFC did not disable her is a reiteration of her challenge to the

ALJ's credibility determination and her claim that she was not permitted to

fully testify about her conditions.  As previously noted, the ALJ's credibility

found support in the record and Leveque had sufficient opportunity to testify

about her conditions, so her challenge to the ALJ's RFC is without merit.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Leveque's

Motion for Summary Judgment **[R. 16]** be **DENIED**, the Commissioner's

Motion **[R. 18]** be **GRANTED** and this case be **AFFIRMED**.


Dated: June 16, 2015                    s/Elizabeth A. Stafford

                                        ELIZABETH A. STAFFORD
                                        United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

19

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2015.

20

s/Marlena Williams
MARLENA WILLIAMS
Case Manager