UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE ANN LEVEQUE,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

CASE NO. 2:14-cv-12096

HON. MARIANNE O. BATTANI


**OPINION AND ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS (Doc. 23)
AND ADOPTING THE REPORT AND RECOMMENDATION (Doc. 22)**

**I.    INTRODUCTION**

Before the Court are the Plaintiff Michelle Ann Leveque's objections (Doc. 23) to Magistrate Judge Elizabeth A. Stafford's June 16, 2015, Report and Recommendation ("R&R") (Doc. 22). In the R&R, the Magistrate Judge recommended that the Court grant summary judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, (Doc. 19) and deny Plaintiff's motion for summary judgment (Doc. 16). For the reasons that follow, the Court **OVERRULES** the Plaintiff's objections and **ADOPTS** the R&R.

**II.    STATEMENT OF FACTS**

As the parties have not objected to the R&R's recitation of the facts, the Court adopts that portion of the R&R. (See Doc. 22, pp. 2-6.)

**III.    STANDARD OF REVIEW**

    **A.  Objections to a Magistrate Judge's R&R**

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the objection requirement." Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006). Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

**B.  Standard of Review Applicable to Social Security Cases**

2

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

**IV. DISCUSSION**

**A. Title II versus Title XVI Determinations of Disability**

On April 7, 2010, Plaintiff filed concurrent claims for Title II period of disability and disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). Plaintiff's Title II claim was denied, as she was determined not to have been disabled between her alleged onset date of May 7, 2008, and her date last insured of December 31, 2009. Plaintiff appeals this DIB decision in the present case. However, Plaintiff's Title XVI claim was granted, as the field office found her to be disabled. Plaintiff argues that it is illogical for her to have been found eligible to receive SSI but not DIB benefits, considering the same medical records were relied upon and same standards were applied in both claims.

Because SSI benefits are not awarded retroactively, the medical evidence most pertinent to Plaintiff's Title XVI claim was dated from April 7, 2010, onward. See Social Security Ruling 83-20 ("Under title XVI, there is no retroactivity of payment. Supplemental security income (SSI) payments are prorated for the first month for which eligibility is established after application . . . ."). Conversely, DIB benefits may be awarded retroactively, from the alleged onset date or other date at which disability is established. See id. ("In title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received."). Accordingly, the medical evidence most relevant to Plaintiff's Title II claim were dated between the alleged onset date of May 7, 2008, and her date last insured of December 31, 2009. Given the fact that the DIB and SSI claims were decided by

primarily relying on different sets of evidence, the disparate outcomes are not logically inconsistent.

### B. Step Two Analysis

At Step Two of the sequential analysis framework, the Commissioner evaluates whether a claimant has a severe impairment or combination of impairments for a continuous period of twelve months. In the present case, the Administrative Law Judge ("ALJ") determined that Plaintiff suffered from the following severe impairments: hypertension, asthma, diabetes mellitus, and anemia. (Tr. 18). However, the ALJ also determined that Plaintiff's recurrent cellulitis condition was not a severe impairment, reasoning that the evidence did not support a finding that the condition has more than a minimal impact on her ability to perform work-related tasks. (Id.). The ALJ specifically observed that in every instance in which Plaintiff developed a cellulitis abscess, it has been treated, and she has been released. (Id.). The ALJ went on to find that Plaintiff's "allegations of MRSA infections are unsupported. Lab work from May 9, 2008, and October 8, 2008, only showed staphylococcus aureus (see 20F), not methicillin-resistant Staphyloccus [sic] aureus, which is MRSA." (Tr. 20).

Plaintiff argues that the R&R omits various findings in reference to Step Two and that the ALJ erred in discrediting Plaintiff's lab results and testimony regarding MRSA. Plaintiff also objects that her dermatological condition causes her severe pain, requires her to be isolated so as not to transmit the infection to others, and, combined with her diabetes, results in complications such bloodstream infections and difficulty healing. These objections were presented before and considered by the Magistrate Judge. In the R&R, the Magistrate Judge concluded that although "the ALJ may have

5

misinterpreted Leveque's lab results as not indicative of MRSA, Leveque offers no evidence that that diagnosis meant that she required work-related restrictions not already contemplated by the ALJ's RFC, and none appear obvious to this Court." (Doc. 22, pp. 12-13). Accordingly, the R&R found the potential error to be harmless.

      Consistent with the Magistrate Judge's conclusions, whether or not the ALJ mischaracterized Plaintiff's skin condition as cellulitis or MRSA is ultimately harmless error. Cole v. Astrue, 661 F.3d 931, 940 (6th Cir. 2011) (reasoning that an ALJ's failure to comport with the regulations may be deemed harmless where the determination meets the goal if not the precise terms of the regulations). Whatever Plaintiff's condition, the evidence of record does not demonstrate that it resulted in a physically limiting impairment. For an impairment to be classified as "severe," it must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.920(c), 404.1520(c). When Plaintiff has presented with a dermatological abscess, her physicians typically drain it, prescribe her pain medication and antibiotics, and release her the same day. (See Tr. 264, 268, 283, 314, 318, 434). The record is completely devoid of any indication of complications such as bloodstream infections or difficulty healing. Indeed, Plaintiff has reported more than once that the antibiotic Bactrim worked well in resolving these abscesses. (Tr. 268, 314). Moreover, although Plaintiff has been prescribed Vicodin for pain, no medical expert has characterized the pain as so severe as to preclude work. Finally, no medical source has recommended that Plaintiff be isolated when she develops infectious abscesses. Given the straightforward and effective treatment and lack of any physician opinion

6

stating that Plaintiff's dermatological issues restricted her physically in any way, the ALJ's conclusion that her cellulitis was not severe is supported by substantial evidence.

## C. Listings

Plaintiff appears to contest that she met or medically equaled Listing 9.00 (Endocrine Disorder) and Listing 8.00 (Skin Disorders). The Magistrate Judge considered these arguments in detail, concluding that the ALJ permissibly relied on the opinions of state agency medical consultants who found that Plaintiff did not meet or equal a listing. (Doc. 22, pp. 13-14). The Magistrate Judge additionally examined whether Plaintiff would have met the listing criteria and determined that she would not.

The Court agrees with the Magistrate Judge's analysis and conclusions. For those individuals claiming disability based on diabetes mellitus and chronic hyperglycemia, Listing 9.00 requires an evaluation under other bodily systems, including Listing 8.00 for poorly healing bacterial and fungal skin infections. In order to meet Listing 8.04, for chronic infections of the skin or mucous membranes, a claimant must demonstrate "extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed." After independently reviewing all of the medical records provided, the Court agrees with the Magistrate Judge's determination that the Plaintiff developed five lesions during the period at issue. (See Tr. 264, 268, 283, 314, 318). As discussed above, each lesion appears to have been responsive to treatment, given that Plaintiff did not require further medical treatment and given Plaintiff's own admission that Bactrim had worked well in resolving these abscesses. The opinions of state agency reviewers Bernard Stevens, M.D., and

James L. Greco, M.D., also comport with the ALJ's conclusion that Plaintiff did not meet a listing. (<u>See</u> Tr. 357, 417).

Plaintiff also contends that she meets Listing 3.03 for asthma because she suffered from fourteen respiratory infections before her date last insured. A claimant may meet Listing 3.03 by showing chronic bronchitis resulting in chronic pulmonary insufficiency pursuant to the tables at Listing 3.02. Here, Plaintiff's height is 68 inches, her FEV1 value was 3.44L, and her FEV/FVC values were 83%, indicating a normal spirometry. (Tr. 442). Alternatively, a claimant may meet Listing 3.03 by showing "[a]ttacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." During the relevant period at issue, Plaintiff presented to the Henry Ford Emergency Room and to her primary care physician for respiratory issues on May 8, 2008, (Tr. 287), September 25, 2008 (Tr. 278), and March 6, 2009 (Tr. 319). Plaintiff correctly notes that she suffered unresponsive respiratory infections lasting for over three months in 2007. (<u>See</u> Tr. 333, 426-32). However, this issue predates Plaintiff's alleged onset date and, therefore, is not relevant. Likewise, Plaintiff's diagnoses of uncontrolled asthma, desquamative interstitial pneumonitis, and respiratory bronchiolitis type interstitial lung disease were confirmed in 2011, after her date last insured. (Tr. 442, 523, 496). Indeed, state agency medical consultant Dr. Greco opined that the frequency of Plaintiff's asthma exacerbations failed to meet the criteria for Listing 3.03B from the alleged onset date onward. (Tr. 417). Accordingly, the record does not substantiate Plaintiff's contention that she meets Listing 3.03, at least during the period at issue.

### D. Missing Records

Plaintiff claims that the ALJ's decision was erroneous because it failed to take into consideration Exhibits 22F and 23F. As the Magistrate Judge determined, these exhibits were not before the ALJ when he rendered his opinion but rather were submitted to the Appeals Council for review. (Tr. 9). The Appeals Council determined that because the new evidence did not relate to the period at issue, it did not affect the ALJ's decision. (Tr. 6). The Magistrate Judge correctly stated and applied the following legal rule:

> [W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding.

Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 149 (6th Cir. 1996). Remand for new and material evidence is authorized by sentence six of 42 U.S.C. § 405(g).

The Magistrate Judge correctly determined that Exhibits 22F and 23F were not new or material. The Court agrees that Exhibit 22F is merely duplicative of medical documents already contained in other portions of the record. Exhibit 23F concerns dental records from 2005 through 2010 reflecting tooth decay from Plaintiff's smoking and poor oral hygiene. (Tr. 611-13). Plaintiff claims that her dental records demonstrate recurrent dental infections, an inability to eat solid food, and pain requiring a narcotic. However, Exhibit 23F reveals only notes regarding fillings, repairs, and other restorative work. Plaintiff's primary care records reveal that she was experiencing severe jaw and dental pain in 2009 such that she was unable to eat and required

Vicodin for pain. (Tr. 314). Although her dentist recommended restorative work to her teeth, Plaintiff opted to have all of her teeth extracted in March 2010 for affordability reasons. (Id.). After her teeth were extracted, her primary care physician noted that she was healing well, and Plaintiff reported that she was "glad she did that" and was "feeling very good about herself and her health." (Tr. 307). No records indicate that Plaintiff's dental problems would result in any physical restrictions preventing her from working for twelve months or longer. Accordingly, the records contained in 23F are not material, as they would not result in a different result if the case were to be remanded.

### E. Due Process Violations

Plaintiff claims that her due process rights were violated because she was not given an opportunity to question the Vocational Expert ("VE") who testified during her hearing before the ALJ. Plaintiff's objections appear to center on how the VE would have testified had she been asked whether Plaintiff would be precluded from work (i) due to a contagious infection requiring weeks off from work and (ii) due to frequent and unexpected bathroom breaks relating to Plaintiff's irritable bowel syndrome. (Doc. 23, p. 13). First, the record is devoid of any medical statement recommending that Plaintiff be restricted from work or confined to her home due to concerns about spreading an infection. Second, the record does not support Plaintiff's allegations regarding her irritable bowel syndrome or allegations that she must use the bathroom between six and ten times per day. Plaintiff's medical records do not reflect complaints or treatment for irritable bowel syndrome, and her abdominal exams have all been normal. (Tr. 276, 283, 298-301). As the Magistrate Judge found, Plaintiff's sole complaint of diarrhea was attributed to a side effect of her diabetes medication, which was discontinued. (Tr. 312).

Indeed, no reviewing medical source noted any indication of irritable bowel syndrome. (See Tr. 357, 417).

Plaintiff argues, "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880 (9th Cir. 2006). However, the ALJ here did not focus on the lack of substantiation by objective medical evidence but rather on the inconsistency between Plaintiff's testimony during hearing and the fact that she made no subjective complaints to her treating physicians during the period at issue. Therefore, as no evidence within the record supports Plaintiff's assertion that she suffers from irritable bowel syndrome to the degree alleged, the fact that the VE was not questioned about limitations resulting from this condition was at most harmless error. Furthermore, for the same reasons, the ALJ's conclusions regarding Plaintiff's credibility are supported by the record.

Finally, Plaintiff's contention that the ALJ made no findings regarding whether work existed in significant numbers in the local Detroit economy is meritless, as the Commissioner is required only to demonstrate that a claimant is capable of performing work existing in the national economy. See 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . . [w]ork exists in the immediate area in which you live.").

## V. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Date:  September 23, 2015                    s/Marianne O. Battani
                                             MARIANNE O. BATTANI
                                             United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 23, 2015.

                                             s/ Kay Doaks
                                             Case Manager